IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IDRIS ABDUS SABER,** <br> **Plaintiff,** | **CIVIL ACTION** |
| v. | NO. 23-3350 |
| **NAVY FEDERAL CREDIT UNION,** <br> **VINCENT PENNISI, & ALAN RADNEY,** <br> **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff Idris Abdus Saber initiated this civil action by filing a *pro se* Complaint against the Navy Federal Credit Union ("NFCU"), its Chief Financial Officer (Vincent Pennisi), and its Assistant Vice President (Alan Radney), raising claims under the Fair Debt Collection Practices Act ("FDCPA"), the Consumer Financial Protection Act of 2010 ("CFPA"), Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), and the Uniform Commercial Code ("UCC"). He seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Saber leave to proceed *in forma pauperis* and dismiss his Complaint.

**I.      FACTUAL ALLEGATIONS**[1]

Saber's claims arise from a loan he obtained from NFCU to finance a Jeep and a related lien held by NFCU on the Jeep. On April 26, 2023, Saber received a letter from NFCU pre-approving him for a loan for a late model used vehicle in an amount not to exceed $42,399.00. (ECF Nos. 2 at 4; 2-1 at 2-6). The loan was preapproved based on estimates of seventy-two monthly installment payments at a 9.040% annual percentage rate with payments to be made starting thirty days after any preapproved loan item is paid by NFCU. (ECF No. 2-1 at 2).

---

[1] The facts set forth in this Memorandum are taken from Saber's Complaint and attached exhibits. The Court adopts the pagination supplied by the CM/ECF docketing system.

Saber used the proceeds of the NFCU loan to purchase a 2020 Jeep Grand Cherokee on or around May 10, 2023. (ECF No. 2 at 4). In so doing, and in accordance with the terms of NFCU's preapproval, Saber executed a Promissory Note that granted NFCU a security interest or lien on the Jeep. *Id*. at 5. Under Saber's agreement with NFCU, his first monthly payment of $792.78 was due on June 20, 2023. (ECF No. 2-1 at 11). In accordance with those documents, NFCU "transmitted a Lien and Title Information Report by Vintek to the Pennsylvania Department of Transportation" to place a lien on the car held by NFCU associated with its financing of the Jeep. (ECF No. 2 at 5).

When Saber failed to pay his first installment of $792.78 by June 20, 2023, NFCU sent him a notice that his "consumer loan[] is past due." (ECF No. 2-1 at 17). Rather than paying the bill, Saber sent a document entitled "Constructive Notice" to NFCU directed to the attention of its Assistant Vice President, "request[ing] the title to the collateral be released from the Pennsylvania Department of Transportation and sent to the principal address above as this account is discharged." *Id.* at 16; (ECF No. 2 at 5). Saber subsequently received a notice that NFCU deducted $257.62 from his checking account on May 26 as a payment on his loan, but the documents attached to the Complaint reflect that this amount could be associated with a different loan, rather than the loan for the car. *Id*. at 5; (ECF No. 2-1 at 19-20) (reflecting a different interest rate than on the loan for the car).

In any event, Saber subsequently sent NFCU a "Constructive Notice of Conditional Acceptance" full of incoherent legal jargon that appears to disclaim NFCU's interest in the car, demanded a response from NFCU, and concluded that a failure to respond "will be deemed agreement and an inability to prove your claim, thereby indicating no security interest in, or rights to possession of or sale of the property." *Id*. at 22. The document included a "privacy act

notice" that invoked various federal laws, including the FDCPA, and purported to "expressly reserve[]" Saber's rights under the UCC.  *Id.* at 23-24.  On July 31, 2023, NFCU sent a letter to Saber acknowledging the materials he sent and stating that his documents "do not release [him] from [his] obligation to Navy Federal" and that he was responsible to pay his debts.  *Id.* at 27; (ECF No. 2 at 5).  Saber responded with a letter to NFCU claiming that he does not owe any "debt" and accusing NFCU of violating the FDCPA among other laws.  *Id*. at 6; (ECF No. 2-1 at 29).  NFCU responded with a letter dated August 14, 2023, confirming the validity of Saber's debt related to the loan.  *Id*. at 32-33; (ECF No. 2 at 6).

Saber responded by filing the instant civil action on August 25, 2023.  He alleges that his claims are predicated on "the improper acts of misconduct by the Respondent(s) who is [sic] wrongfully attempting to collect on an alleged debt on the assumption that they are the alleged creditor."  *Id*. at 2.  Saber claims the following "violations" have occurred:  (1) "the taking of monies from [his] checking account to charge to an alleged debt"; (2) "not providing evidence of being a creditor; deceptive practices by acting like a creditor by use of the US postal mail, telephone calls, email and other electronic services;" and (3) "unconscionable conduct by placing a lien on property [they] do not control."  (*Id.*)  Saber further alleges that the "Respondent(s)" are debt collector(s) as defined within the FDCPA, and he parrots the statutory definition of "debt collector" in support.  *Id.* at 2.  Saber seeks damages and the removal of NFCU's lien from his car.  *Id*. at 9.

## II.     STANDARD OF REVIEW

The Court will grant Saber leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Saber's Complaint if it fails to state a claim.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 686-87.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). As such, if the Complaint fails to set forth a proper basis for this Court's subject matter jurisdiction, then the action must be dismissed. *See, e.g.*, *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

As Saber is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245).

### III.   DISCUSSION

#### A.  FDCPA Claims

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' The FDCPA pursues these stated purposes by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (quoting 15 U.S.C. § 1692(e) and citing 15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (*en banc*) ("The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors."). Among other things, the FDCPA prevents debt collectors from engaging in harassing, oppressive or abusive conduct to collect a debt, § 1692d, making false, deceptive, or misleading representations in connection with debt collection, § 1692e, and using "unfair or unconscionable means" to collect a debt, § 1692f. To state a claim under the FDCPA, a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citation omitted).

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This statutory language focuses "on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017); *see*

*Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) ("Specifically excluded from the definition's reach are . . . a creditor's officers and employees collecting debts for the creditor, a company collecting debts only for its non-debt-collector sister company, an entity collecting a debt it originated, and one collecting a debt it obtained that was not in default at the time of purchase."). In contrast, "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id.* § 1692a(4).

Not only does Saber fail to adequately allege that NFCU or its officers are debt collectors, but the exhibits to the Complaint reflect that in communicating with Saber, NFCU acted as a creditor by communicating about a debt owed to itself in connection with the car loan. *See Guyton v. PECO*, 2018 WL 10016428, at *1 (E.D. Pa. Aug. 24, 2018), *aff'd*, 770 F. App'x 623 (3d Cir. 2019) (*per curiam*) ("Plaintiff owed the relevant 'debt' (her utility bill) to PECO, as the creditor for services rendered to her. PECO thus is not a debt collector under the FDCPA.").[2] The Court need not credit Saber's bald and conclusory allegations to the contrary because his exhibits belie his allegation that the Defendants acted as debt collectors. *See Blackwell v. United Auto Credit*, 2021 WL 1238720, at *2 (E.D. Pa. Apr. 2, 2021) ("[T]he Court need not credit an

---

[2] *See also James v. Ally Bank*, 2023 WL 1093891, at *3 (E.D. Tex. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 1081270 (E.D. Tex. Jan. 27, 2023) (Ally was not a debt collector when attempting to collect a debt owed to itself in connection with financing plaintiff's car); *Lewis v. Ally Fin., Inc.*, 2022 WL 1286587, at *6 (N.D. Ga. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 1286554 (N.D. Ga. Mar. 22, 2022) (where plaintiff's "Amended Complaint only contains allegations describing Ally collecting or attempting to collect on a debt Plaintiff owed to it on her car loan, not a debt owed to another" the court could not "conclude that Ally was acting as a debt collector under the FDCPA as it pertains to this action"); *Mays v. Ally Fin.*, 2021 WL 4077948, at *3 (E.D. Pa. Sept. 8, 2021) ("Creditors—*i.e.*, entities offering or extending credit creating a debt or entities to whom a debt is owed—are generally not subject to the FDCPA."); *Darbouze v. Ditech Fin., LLC*, 2018 WL 4214145, at *3 (M.D. Pa. July 24, 2018), *report and recommendation adopted sub nom*, 2018 WL 4211730 (M.D. Pa. Sept. 4, 2018) ("[B]ecause Ditech sought to collect a debt for its own account, . . . it is recommended that the plaintiffs' FDCPA claim be dismissed for failure to state a claim upon which relief can be granted").

allegation that exhibits contradict." (citing *Vorchheimer v. Phila. Owner's Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018)).  Accordingly, Saber has failed to state a FDCPA claim.[3]

### B. CFPA Claims

Saber's claims under the CFPA are also not plausible.  Numerous courts have held that there is no private cause of action under the CFPA and that the Act is enforceable only by the Bureau of Consumer Financial Protection.  12 U.S.C. § 5564(a).  *See Conway v. U.S. Bank, Nat'l Ass'n*, 2018 WL 6417346, at *3 (E.D. Pa. Dec. 6, 2018) ("There is no private right of action under the Consumer Financial Protection Act; the Act is enforced only by the Bureau of Consumer Financial Protection." (collecting cases)).  Accordingly, Saber cannot state a claim under the CFPA.

### C. State Law Claims

Turning to Saber's remaining claims, which arise under Pennsylvania law, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a).[4]  This provision grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting

---

[3] Additionally, to the extent Saber seeks an injunction granting him title to the car, such relief is not available under the FDCPA.  *See Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *see also Franklin v. GMAC Mortg.*, 523 F. App'x 172, 173 (3d Cir. 2013) ("Franklin is not entitled to injunctive relief under the FDCPA.").

[4] The Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims, having dismissed all of Saber's federal claims.

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). The rule in the Third Circuit is that that federal credit unions are citizens of the states in which they are based or localized. *See Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 455 (3d Cir. 1959) (assessing citizenship of federal credit union and finding the "localization of activity within a particular state sufficed to make a federal corporation a citizen of that state"); *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila.*, 657 F.2d 29, 31 (3d Cir. 1981) (concluding, relying on *Feuchtwanger*, that "First Federal, a Pennsylvania based federal savings and loan association, is deemed a citizen of Pennsylvania."). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

The Complaint does not establish any basis for exercising diversity jurisdiction. Saber lists a Pennsylvania address for himself and alleges that "Respondent(s) principal place of business" is in Horsham, Pennsylvania. (ECF No. 2 at 3). It is not clear if this allegation is intended to allege that all Defendants are citizens of Pennsylvania. Nevertheless, since the Complaint indicates that Saber and at least one Defendant are citizens of Pennsylvania, the Court cannot exercise diversity jurisdiction. *Pradel v. VAH Lyons Emps. Fed. Credit Union*, 2020 WL 2747766, at *2 n.2 (D.N.J. May 27, 2020) ("Courts have held that diversity of citizenship does not exist when a federal credit union primarily operates in a plaintiff's domicile."). Accordingly,

Saber's state law claims will be dismissed for lack of jurisdiction without prejudice to him reasserting those claims in state court.[5]

IV.   **CONCLUSION**

For the foregoing reasons, the Court will grant Saber leave to proceed *in forma pauperis*, dismiss his federal claims for failure to state a claim, and dismiss his state law claims for lack of subject matter jurisdiction. Saber will not be given leave to file an amended complaint because the Court concludes that amendment would be futile.

An appropriate Order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**

---

[5] The Court expresses no opinion on the merits of any state law claims.